FILED

2024 Jan-24  AM 11:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MARK CALEB ENGLISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-cv-00488-MHH-HNJ |
| | ) | |
| OFFICER GILBERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Mark Caleb English ("English") filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights protected by the Eighth Amendment to the United States Constitution while housed at Limestone Correctional Facility.  (Doc. 1).[1]  English names as defendants Officer Gilbert and Sergeant Obenchain.  (Doc. 1 at 3).  English seeks monetary relief.  (Doc. 1 at 4).  Consistent with its usual practice, the court referred the complaint to the undersigned Magistrate Judge for a preliminary report and recommendation pursuant to 28 U.S.C. § 636(b)(1). *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

For the reasons discussed herein, the undersigned Magistrate Judge **RECOMMENDS** the court **GRANT** the defendants' motion for summary judgment,

---

[1] Citations herein to "Doc(s). __" correspond to the document number of the pleadings and other materials in the court file, as compiled by the Clerk and reflected on the docket sheet.  Unless otherwise noted, pinpoint citations reflect the page of the electronically filed document, which may not correspond to the pagination on the original "hard copy."

(doc. 21), as to all official capacity claims for monetary relief and **DENY** the defendants' motion for summary judgment, (doc. 21), as to all individual capacity claims for monetary relief. The undersigned **FURTHER RECOMMENDS** the court refer the individual capacity claims for monetary relief back to the Magistrate Judge for further proceedings.

## I.   PROCEDURAL HISTORY

English filed his *pro se* complaint on April 4, 2022.[2] (Doc. 1 at 4). On June 13, 2022, the undersigned entered an Order for Special Report directing the Clerk of Court to forward copies of the complaint and supplemental complaint to the named defendants. (Doc. 6 at 1-2, 7-8). On February 10, 2023, the defendants filed a special report with supporting evidence. (Doc. 21). On February 14, 2023, the court construed the special report as a motion for summary judgment and notified English he had 21 days to respond by filing affidavits or other evidence. (Doc. 24 at 1). The court also advised English of the consequences of any default or failure to comply with Rule 56.

---

[2] The Clerk of Court docketed English's complaint on April 18, 2022. (*See* Doc. 1). However, under the "prison mailbox rule," because a prisoner proceeding *pro se* has virtually no control over the mailing of a pleading, the court deems the pleading filed at the time the prisoner delivers the pleading to prison or jail officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (extending "*Houston* to pro se prisoners filing complaints in section 1983 cases and claims under the Federal Tort Claims Act"). "Absent evidence to the contrary in the form of prison logs or other records," the court assumes a *pro se* prisoner delivered his pleading to prison authorities the day he signed it. *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam); *see also Taylor v. Williams*, 528 F.3d 847, 849 (11th Cir. 2008) (assuming *pro se* petitioner delivered his § 2254 habeas petition to prison authorities on the day he signed it). English dated his complaint April 2, 2022. (Doc. 1 at 4).

(Doc. 24 at 1-2); *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Upon his request, the undersigned granted English an extension of time to file his response.  (*See* Doc. 26).  To date, English has filed no further response.

This case proceeds before the court on Officer Gilbert and Sergeant Obenchain's motion for summary judgment.  (Doc. 21).

## II.  STANDARD OF REVIEW

Because the court construed the defendants' special report as a motion for summary judgment, *Federal Rule of Civil Procedure* 56 governs the motion.  Under Rule 56(a), summary judgment stands proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  The moving party has the initial burden of showing there are no genuine issues of material fact, and he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The plaintiff has the ultimate burden of proving his claims, so the moving party will be entitled to judgment as a matter of law on any claim unless the plaintiff shows some evidence supporting each element of that claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  As the Supreme Court explained:

In our view, the plain language of Rule 56[] mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.*

The non-moving party may establish a genuine issue of material fact through his sworn statement, usually an affidavit, as well as through allegations in a sworn complaint. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citations omitted); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form.")). Unless a party's unsworn statement meets the statutory criteria set forth in 28 U.S.C. § 1746,[3] said statement stands "incompetent to raise a fact issue precluding

---

[3] As the Eleventh Circuit explained:

[U]nder § 1746, a declaration executed within the United States will substitute for a sworn affidavit if the declarant dates and subscribes the document as true under penalty of perjury in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746(2).

In short, § 1746 has these statutory requirements for an unsworn statement to substitute for a sworn affidavit: The declarant must (1) date and sign the document, and (2) subscribe its content as "true," (3) under "penalty of perjury," (4) in substantially the above-quoted pattern language.

summary judgment" and a district court may not consider it in evaluating a motion for summary judgment.  *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (parallel citation omitted)).  Furthermore, a non-moving party "'may not rest upon the mere allegations or denials of his pleading,'" but must set forth specific facts showing a genuine issue for trial exists.  *See Sears*, 922 F.3d at 1207 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Specific facts consist of "non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety[,]" "describe the external world as [non-movant] observed it at the time[,]" and "are based on [non-movant's] first-hand personal knowledge, not [non-movant's] subjective beliefs."  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013); *see also Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) ("[M]ere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) (parallel citation omitted)).

"'As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly

---

*Roy v. Ivy*, 53 F.4th 1338, 1348 (11th Cir. 2022).

been observed or events that are contrary to the laws of nature.'" *Sears*, 922 F.3d at 1208 (quoting *Feliciano*, 707 F.3d at 1253); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). In addition, because the plaintiff proceeds *pro se*, the court must construe the complaint more liberally than a pleading drafted by a lawyer. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Roy*, 53 F.4th at 1346. "*Pro se* litigants, however, are required to conform to procedural rules." *Roy*, 53 F.4th at 1346 (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam)).

### III.  SUMMARY JUDGMENT FACTS

The Alabama Department of Corrections ("ADOC") employs defendant Officer Gilbert as a Correctional Officer at Limestone Correctional Facility ("Limestone") in Harvest, Alabama. (Doc. 21-2 (Gilbert Aff.) at 1). ADOC employs Sergeant Obenchain as a Correctional Officer at Limestone. (Doc. 21-3 (Obenchain Aff.) at 1).

On January 14, 2022, while English sang at the back of his cell, Officer Gilbert opened English's tray slot and emptied a full can of mace into English's cell and on English for no reason.[4] (Doc. 1 at 3). When Officer Gilbert asked English to "handcuff

---

[4] Officer Gilbert tells a different story: At approximately 1:00 p.m. on January 14, 2022, Officer Gilbert observed English beating on his cell door while conducting a security check. (Doc. 21-2 (Gilbert Aff.) at 1; *see also* Doc. 21-1 at 1-2). Officer English ordered English to stop several times. (Doc. 21-2 (Gilbert Aff.) at 1; *see also* Doc. 21-1 at 1-2). English repeatedly refused. (Doc. 21-2

up," English complied, and Officer Gilbert ceased all force.  (Doc. 21-2 (Gilbert Aff.) at 2; *see also* Doc. 21-1 at 1-2).  Officer Gilbert reported the use of force incident to Sergeant Brian Ray.  (Doc. 21-1 at 1).

Licensed Practical Nurse ("LPN") Vada Quick evaluated English following the use of force and noted no injuries.  (Doc. 21-1 at 1, 5).  Sergeant Ray took 12 digital photographs of English following the use-of-force incident.  (Doc. 21- at 1, 6-7).  The pictures depict slight redness around English's left eye.  (Doc. 21-1 at 7).  English refused to write a statement concerning the incident.  (Doc. 21-1 at 1, 3).  At approximately 1:30 p.m. Sergeant Ray reported the use-of-force incident to Captain Shannon Caldwell.  (Doc. 21-1 at 1).

Captain Caldwell conducted a use-of-force investigation.  (*See* Doc. 21-1 at 8).  After interviewing Officer Gilbert and English, Captain Caldwell determined Officer Caldwell utilized appropriate force and ceased force once English became compliant.  (Doc. 21-1 at 8).

On or around February 22, 2022, English asked Sergeant Obenchain for cleaning supplies to clean his cell.  (Doc. 1 at 3).  Sergeant Obenchain opened the tray flap to English's cell and punched English in the face.  (Doc. 1 at 3).  Although Sergeant

---

(Gilbert Aff.) at 1-2; *see also* Doc. 21-1 at 1-2).  Officer Gilbert radioed for Sergeant Brian Ray to report to Dormitory D to prevent destruction of state property or English from harming himself.  (Doc. 21-2 (Gilbert Aff.) at 2; *see also* Doc. 21-1 at 1-2).  Officer Gilbert then administered Sabre Red (pepper spray or mace) to English's face.  (Doc. 21-2 (Gilbert Aff.) at 2; *see also* Doc. 21-1 at 1-2).  However, English's version of events controls for purposes of summary judgment.

Obenchain worked in English's dorm on February 22, 2022, he denies English's allegations.  (Doc. 21-3 (Obenchain Aff.) at 1).  Moreover, no institutional records support English's allegation that Sergeant Obenchain used force against him on February 22, 2022.  (*See* Doc. 21-3 (Obenchain Aff.) at 2).

### IV. ANALYSIS

English seeks monetary relief for Officer Gilbert and Sergeant Obenchain's purported excessive use of force against him in violation of the Eighth Amendment to the United States Constitution.  (*See generally* Doc. 1; Doc. 6 at 2-3; Doc. 25).

### A.     Official Capacity Claims

The doctrine of sovereign immunity precludes English's constitutional claims to the extent he sues each defendant in his official capacity.  The Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Likewise, Eleventh Amendment immunity also bars claims for monetary damages brought against officials and employees of state entities sued in their official capacities.  *Id.* at 101-03.  Therefore, English's claims against each defendant in his official capacity warrant dismissal.

### B.     Individual Capacity Claims

The Eighth Amendment governs convicted prisoner's claims for excessive force by prison officials.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986) *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S.

34 (2010)) ("The Eighth Amendment's proscription of cruel and unusual punishments…governs prison officials' use of force against convicted inmates.").

As relayed, the "Eighth Amendment, among other things, prohibits 'cruel and unusual punishments.'" *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (citing U.S. Const. amend. VIII). Pursuant to Supreme Court authority, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In assessing an inmate's excessive force claim, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6 (citing *Whitley*, 475 U.S. at 320-21). "[A] correctional officer's malicious and sadistic actions that both have no legitimate penological purpose and are unacceptable by contemporary standards of decency subject a prisoner to cruel and unusual punishment, in violation of the Eighth Amendment." *Sconiers*, 946 F.3d at 1265 (citing *Wilkins*, 559 U.S. at 37).

The excessive force standard encompasses both subjective and objective inquiries. Subjectively, the court must assess whether "'the excessive force . . . was sadistically and maliciously applied for the very purpose of causing harm.'" *Sconiers*, 946 F.3d at 1265 (citations omitted). Objectively, the court must assess "whether the official's actions were 'harmful enough.'" *Id.* (citations omitted). "[T]he official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional

9

violation.'" *Id.* (quoting *Hudson*, 503 U.S. at 8).

As the Eleventh Circuit recently articulated, the Supreme Court's *Wilkins* decision "clarified that courts cannot find excessive force claims not 'actionable' because the prisoner did not suffer 'more than de minimis injury.'" *Id.* at 1267. Unquestionably, not "every malevolent touch by a prison guard gives rise to a federal cause of action," as an "inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 37, 38 (quoting *Hudson*, 503 U.S. at 8). Nevertheless, "the Eighth Amendment prohibits force that offends 'contemporary standards of decency,' regardless of whether 'significant injury is evident,' though the extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been thought necessary.'" *Id.* at 1266 (quoting *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

With these principles in mind, the Supreme Court set out certain factors courts should consider when evaluating whether force deployed by corrections officials exceeded constitutional boundaries. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the

severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Whitley*, 475 U.S. at 321; *see also Campbell*, 169 F.3d at 1375 (citing *Whitley*, 475 U.S. at 321; *Hudson*, 503 U.S. at 7) (same).

### 1.    Officer Gilbert

English's version of events establishes Officer Gilbert deployed force on English without penological justification thereby violating the Eighth Amendment. *See Sconiers*, 946 F.3d at 1267-68.  To recap, English asserts Officer Gilbert opened English's tray slot and emptied a full can of mace into English's cell and on English for no reason as English sang at the back of his cell on January 14, 2022.  (Doc. 1 at 3).

At the summary judgment stage, Officer Gilbert's directive for English to cease beating on his cell door does not provide a penological justification for Officer Gilbert to pepper spray English.  If English sang at the back of his cell at the time Officer Gilbert deployed mace, English could not have been beating on his cell door at that time.  *See Sconiers*, 946 F.3d at 1267-68 (punishing an inmate for questioning an officer's order would not have a legitimate penological purpose if the officer gave the order "for nothing more than [his] own enjoyment," or to "toy[ ] with [the inmate] like a yo-yo").  Moreover, if English previously beat on his cell door, he ceased doing so by the time Officer Gilbert deployed the mace and force no longer stood necessary.  *See Pullen v. Osceola Cnty.*, 861 F. App'x 284, 289 (11th Cir. 2021) (unpublished)[5] (per curiam)

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. Rule 36-2.

("'Once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth Amendment, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation.' In particular, 'when jailers continue to use substantial force against a prisoner who has clearly stopped resisting - whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated - that use of force is excessive.'" (cleaned up) (quoting *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991); *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010))); *Danley*, 540 F.3d at 1309 ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting - whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated - that use of force is excessive." (citation omitted)).

Viewing the record in the light most favorable to English, English made a *prima facie* showing Officer Gilbert used excessive force against him in violation of the Eighth Amendment on January 14, 2022. As such, Officer Gilbert does not stand entitled to judgment as a matter of law, and the court should deny his motion for summary judgment.[6]

---

[6] Officer Gilbert argues his entitlement to qualified immunity on English's Eighth Amendment excessive force claim against him. (Doc. 21 at 7- 8). However, Eighth Amendment excessive force claims are not susceptible to summary judgment on qualified immunity grounds:

## 2.   Sergeant Obenchain

English's version of events establishes Sergeant Obenchain utilized force on English without penological justification thereby violating the Eighth Amendment. *See Sconiers*, 946 F.3d at 1267-68.  To recap, English contends Sergeant Obenchain opened the tray flap to English's cell and punched English in the face after English asked for cleaning supplies on or around February 22, 2022.  (Doc. 1 at 3).  These facts do not establish English posed a threat to safety or security or that English failed to obey a direct order.[7]

Viewing the record in the light most favorable to English, English made a *prima facie* showing that Sergeant Obenchain used excessive force against him in violation of the Eighth Amendment on February 22, 2022.  As such, Sergeant Obenchain does not stand entitled to judgment as a matter of law, and the court should deny his motion for summary judgment.[8]

---

[A] defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution.... There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a ... motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted).

[7] Sergeant Obenchain contends the incident did not occur and so proffers no additional factual allegations.  (*See* Doc. 21-3 (Obenchain Aff.) at 1-2).

[8] Sergeant Obenchain argues he stands entitled to qualified immunity on English's Eighth Amendment excessive force claim against him.  (Doc. 21 at 7- 8).  However, Eighth Amendment excessive force claims are not susceptible to summary judgment on qualified immunity grounds:

## VII. Recommendation

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** the court **GRANT** the defendants' motion for summary judgment, (doc. 21), as to all official capacity claims for monetary relief and **DENY** the defendants' motion for summary judgment, (doc. 21), as to all individual capacity claims for monetary relief. The undersigned **FURTHER RECOMMENDS** the court refer the individual capacity claims for monetary relief back to the Magistrate Judge for further proceedings.

## VIII. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days**. The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

---

[A] defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution.... There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a ... motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted).

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order.  Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues.  The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may appeal only from a final judgment entered by a District Judge.

**DONE** this 24th day of January, 2024.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE